The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The carrier liable on the risk is CNA Insurance Company.
4. Plaintiff's average weekly wage is $813.26, yielding a compensation rate of $542.20.
5. The following were admitted into evidence at the Deputy Commissioner's hearing:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement,
 b. Stipulated Exhibit Number 2, Industrial Commission forms, medical records, discovery responses, employment file, and
 c. Plaintiff's Exhibit Number 1, Employment Security Commission appeals decision for Robert Mullins.
6. The issues before the Full Commission are whether plaintiff sustained compensable injuries on or about July 27, 2006 and August 7, 2006, and, if so, what benefits she is entitled to receive.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 62 years old. In March 1990, plaintiff began working for defendant-employer, a company which makes coaxial cables. *Page 3 
2. In October 2000, plaintiff began treating with her primary care physician, Dr. John Linster, for low back pain. Plaintiff reported that her low back pain became progressively worse over the years and that it began to radiate down into her right leg. Dr. Linster diagnosed plaintiff with chronic low back pain, degenerative joint disease, degenerative disc disease and depression. Dr. Linster prescribed OxyContin, Relafen and Neurontin for plaintiff's back pain.
3. Dr. Linster continued to treat plaintiff for her back pain and changed medications to accommodate her worsening pain. As of July 10, 2006, plaintiff was taking Methadone and Percocet for her pain. Despite her chronic back pain and regular medical treatment, plaintiff was able to manage her pain with medication and to perform her job duties with defendant-employer.
4. Plaintiff bid on and was awarded a primary operator of an extruder machine position. Plaintiff was trained on three cycles on first shift and two cycles on the night shift. As the primary operator, plaintiff was required to lift 20 pounds about 15 times per 12-hour shift.
5. On July 27, 2006, plaintiff was assigned to perform work as a scrapper, which was part of the primary operator duties. Prior to this date, plaintiff had not performed the work of a scrapper, who is responsible for salvaging wire off partially filled reels/spindles. The duties of the scrapper require lifting 100 to 200 reels weighing approximately 30 to 75 pounds. Plaintiff was also required to climb up and down about five steps to work this machine.
6. After working in the scrapper job for approximately one hour, plaintiff had lifted about 20 of the 30-pound reels and repeatedly climbed the steps to the machine. At this time, plaintiff began experiencing a shooting pain across her lower back. She reported the pain to her supervisor and was seen by the company nurse. The nurse's medical records do not reveal any reports of back or wrist pain, but stated that plaintiff's blood pressure was high and that she felt *Page 4 
weak and hot. Plaintiff left work prior to her shift ending, but returned to work the following two nights.
7. On August 1, 2006, plaintiff saw orthopedic surgeon Dr. Robert Liljeberg for her back pain. Dr. Liljeberg restricted plaintiff's activities to 20-pounds lifting and limited her climbing. Plaintiff provided the work note to the human resources department and was eventually placed in a new position as a jacket helper. Plaintiff testified that this job was more physically demanding than the scrapper or extruder machine jobs.
8. On August 6, 2006, the first evening plaintiff performed the jacket helper position, she picked up a reel of wire weighing approximately 35 pounds and turned 180 degrees to place the reel in a box on a table four feet high. As plaintiff was turning with the reel, she felt excruciating back pain, which caused her to drop the reel. Plaintiff's supervisor, Tim Kirby, found plaintiff crying in pain following the accident and he wrote an injury report.
9. Plaintiff was taken to Catawba Valley Medical Center, where she was diagnosed with a lower back strain and advised to follow up with a spine physician. On August 10, 2006, plaintiff followed up with Carolina Orthopaedic Specialists, where she reported the events of August 6, 2006. An MRI and physical therapy were recommended and plaintiff was written out of work. Plaintiff has not worked since August 7, 2006.
10. Plaintiff sought additional treatment with Dr. Linster who noted abnormal findings of antalgic gait and back muscle spasms. Dr. Linster ordered another MRI, which revealed degenerative change without disc protrusion or significant lumbar stenosis. Plaintiff continued to treat with Dr. Linster for her worsening back pain. On October 12, 2006, Dr. Linster referred plaintiff to neurosurgeon Dr. Peter Miller for a surgical evaluation. Dr. Miller informed plaintiff that she was not a surgical candidate. *Page 5 
11. On November 8, 2006, Dr. Linster wrote plaintiff out of work. As of the date of his deposition on February 6, 2008, Dr. Linster opined that plaintiff is completely incapable of any work due to her back condition.
12. On August 8, 2007, plaintiff was terminated by defendant-employer and subsequently qualified for Social Security disability. Plaintiff received short-term disability benefits through a policy entirely funded by defendant-employer from August 10, 2006 through approximately January 23, 2007, in the amount of $362.94 per period. Shortly thereafter, plaintiff testified that her benefits were increased to in excess of $400.00 per period until payments ceased.
13. On the issue of causation, Dr. Miller deferred to the opinions of Dr. Linster and Dr. Liljeberg because he only saw plaintiff once for a surgical evaluation. Dr. Liljeberg opined that the injuries plaintiff sustained on July 27, 2006 and August 6, 2006 were a substantial causal factor in the worsening of her degenerative disc disease. Dr. Linster testified that since the two work incidents, plaintiff has experienced a substantial worsening of her back condition and her depression. In Dr. Linster's opinion, the two incidents were a significant causal factor in the substantial worsening of plaintiff's pre-existing back condition and of her depression.
14. Based on the competent credible medical evidence, the Commission finds that the July 27, 2006 and August 7, 2006 injuries significantly exacerbated plaintiff's pre-existing degenerative disc disease and depression.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 6 
1. On July 27, 2006 and August 7, 2006, plaintiff sustained injuries by accident arising out of and in the course of her employment with defendant-employer in the form of specific traumatic incidents of the work assigned. N.C. Gen. Stat. § 97-2(6). As the direct and natural result of and causally related to her July 27, 2006 and August 7, 2006 injuries by accident, plaintiff sustained a material exacerbation of her pre-existing, non-disabling back condition. Id.
2. Plaintiff has produced sufficient evidence that she sustained a back injury during a judicially cognizable time period and that it was not the result of a gradual deterioration. Fish v. Steelcase, Inc., 116 N.C. App. 703, 449 S.E.2d 233 (1994), cert. denied, 339 N.C. 737,449 S.E.2d 233 (1994).
3. As a result of her compensable injuries, plaintiff is entitled to payment of total disability compensation at the rate of $542.20 per week beginning August 8, 2006 and continuing until plaintiff returns to work or until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. Defendants are entitled to a credit against the total disability benefits awarded herein for the wholly funded short-term disability benefits received by plaintiff during the same period of time. N.C. Gen. Stat. § 97-42.
5. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. As a result of her compensable injuries, plaintiff has also developed depression for which she needs medical treatment. N.C. Gen. Stat. §§ 97-2(19); 97-25. *Page 7 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fees approved below, defendants shall pay plaintiff total disability compensation at a rate of $542.20 per week beginning August 8, 2006 and continuing until plaintiff returns to work or until further Order of the Industrial Commission. Any amount that has accrued shall be paid in a lump sum.
2. Defendants are entitled to a credit for the total amount of short-term disability payments made to plaintiff against the total disability benefits awarded in Paragraph 1 of this Award.
3. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, including treatment for depression, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
4. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel from the accrued amounts. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This 17th day of April 2009. *Page 8 
S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________________ STACI T. MEYER COMMISSIONER
 S/_______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1